Clement S. Roberts (SBN 209203)
*croberts@orrick.com*
**ORRICK HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700 – Fax: (415) 773-5759

Alyssa Caridis (SBN 260103)
*acaridis@orrick.com*
**ORRICK HERRINGTON & SUTCLIFFE LLP**
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020 – Fax: (213) 612-2499

Brent P. Lorimer (*pro hac vice* forthcoming)
*blorimer@wnlaw.com*
Brian N. Platt (*pro hac vice* forthcoming)
*bplatt@wnlaw.com*
**WORKMAN NYDEGGER**
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Tel: (801) 533-9800 – Fax: (801) 328-1707

*Attorneys for Plaintiff The Lovesac Company*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| THE LOVESAC COMPANY, | Case No: 2:21-cv-9904 |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| STITCH INDUSTRIES, INC. dba JOYBIRD | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff The Lovesac Company ("Lovesac") hereby asserts the following claims for patent infringement of United States Patent Nos. 7,213,885, 7,419,220, 8,783,778, 10,123,623, 10,154,733, and 10,806,261 (the "patents-in-suit," attached hereto as Exhibits A-F respectively) against Defendant Stitch Industries, Inc. dba Joybird ("Joybird") and alleges as follows:

## **INTRODUCTION**

1.     Lovesac was founded in 1995, when founder Shawn Nelson built the original eight-foot-wide foam-filled "Lovesac" in the basement of his parents' Utah home.  Shawn would turn his passion into the company called Lovesac, named after the original nylon Lovesac he built in 1995.



2.     In the early 2000s, Lovesac continued its innovative approach to furniture, and in 2005 invented an entirely new category of modular furniture. Lovesac's Sactionals® line of modular furniture introduced interchangeable furniture components designed such that numerous different product configurations could be created using a selection of modular components.  Lovesac sought patents covering its innovative new design beginning in June 2005.

COMPLAINT

3.     The Sactionals innovative, patented 2-piece system leverages the interchangeability of its base and side components to allow for the construction of dozens of possible configurations, a few of which are shown below.



4.     In addition to being modular and reconfigurable, Sactionals separate back and side pieces makes Sactionals the perfect fit for smaller spaces where traditional non-modular furniture was difficult to move or install.

COMPLAINT

1
2
3
4

5.      Beginning in 2021, Joybird introduced an infringing knock-off of the Lovesac Sactionals modular furniture product.  Joybird's "Notch Modular" furniture copies many of the innovative and patented elements of Sactionals, and advertises the same modular, reconfigurable function.

5
6
7
8
9
10
11
12
13



14

https://joybird.com/modular/notch-modular

15
16
17
18
19
20
21
22
23
24
25
26



27
28

https://joybird.com/modular/notch-modular

6.     Lovesac brings this lawsuit to hold Joybird accountable for its willful infringement of Lovesac's patent rights.

## THE PARTIES

7.     Plaintiff The Lovesac Company is a Delaware corporation with a principal place of business at Two Landmark Square Suite 300 Stamford, CT 06901. Lovesac also maintains other established places of business, including retail business locations in this district including, for example, a retail store location at 1308 Montana Ave, Santa Monica, California 90403

8.     Defendant Stitch Industries, Inc. dba Joybird is a Delaware corporation with a principal place of business at 6055 E. Washington Blvd. #900, Commerce, CA 90040.  Joybird also maintains other established places of business, including retail business locations in this district including, for example, a retail store location at 8335 Melrose Ave, Los Angeles, CA 90069.

9.     Joybird is a furniture manufacturing, distribution, and retail company. Joybird conducts product development, engineering, testing, sales, online retail and sales activities, as well as brick-and-mortar retail and sales activities in this district.

10.     Joybird directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, and/or imports the infringing Notch Modular products at issue in this litigation in/into the United States, including in the Central District of California, and otherwise purposefully directs infringing activities to this District in connection with its Joybird product-related activities.

## JURISDICTION AND VENUE

11.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over Joybird because, pursuant to Fed. R. Civ. P. 11(b)(3), Joybird has: (1) availed itself of the rights and benefits of the laws of the State of California, (2) transacted, conducted, and/or solicited

COMPLAINT

business and engaged in a persistent course of conduct in the State of California (and in this district), (3) derived substantial revenue from the sales and/or use of products, such as the infringing Joybird Notch Modular product, in the State of California (and in this District), (4) purposefully directed activities (directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling, and/or advertising its infringing Joybird Notch Modular product, at residents of the State of California (and residents in this district), (5) delivered its infringing Joybird Notch Modular products into the stream of commerce with the expectation that its Joybird Notch Modular products will be used and/or purchased by consumers, and (6) committed acts of patent infringement in the State of California (and in this district).

13.    This Court also has personal jurisdiction over Joybird because it is registered to do business in the State of California and has one or more regular and established places of business in the Central District of California.

14.    Venue is proper in this District under the provisions of 28 U.S.C. § 1400(b) because, as noted above, Joybird has committed acts of infringement in this district and has one or more regular and established places of business in this district.

## **BACKGROUND**

15.    As the specification for exemplary U.S. Patent No. 7,213,885 (the "'885 Patent") explains, customers appreciate furniture that can be easily cleaned, can be moved and stored with ease, and which provides multiple functions. *See*, *e.g.*, '885 Patent (Ex. A), at 1:24-53.  One aspect of the invention of the '885 Patent relates to a "modular furniture assembly that can be assembled, disassembled, rearranged, moved, and cleaned in a quick and efficient manner with minimal effort." *See*, *e.g.*, '885 Patent (Ex. A), at 1:57-59.

16.    According to one aspect of the invention of the '885 Patent, "base(s) and transverse member(s) can be placed in a variety of different positions so as to form a variety of different chairs." *See*, *e.g.*, '885 Patent (Ex. A) at 2:15-17.  The Patent describes this relationship as follows:

- 5 -

COMPLAINT

1
2
3
4
5
6
7

> In one embodiment, the base and transverse member are sized and configured in a defined spatial relationship. For example, in such an embodiment, the length (x) of the base is substantially equal to the length (x) of the transverse member, and the length (x) of the base is Substantially equal to the sum of the width (y) of the base and the width (z) of the transverse member. Thus, x is substantially equal to y+z.   This relationship enables the convenient formation of a variety of different types, sizes and configurations of furniture assemblies.

8   *See*, *e.g.*, '885 Patent (Ex. A) at 2:18-23.  The patent illustrates an example of this
9   spatial relationship in Figure 1.

10
11
12
13
14
15
16
17
18
19



*Fig. 1*

20   *See*, *e.g.*, '885 Patent (Ex. A) at Fig. 1.

21          17.    The '885 Patent further discloses that this "standardized configuration
22   of bases and transverse members enables a user to form a variety of different types
23   and configurations of furniture assemblies."  *See*, *e.g.*, '885 Patent (Ex. A) at 2:30-
24   33.

25          18.    The '885 Patent discloses other benefits of the Sactionals innovative
26   design.   For example, the '885 Patent discloses that such configurations are
27   advantageous in manufacturing, "because a manufacturer can produce a series of
28   bases that have a substantially similar configuration and a series of transverse

COMPLAINT

members that have a substantially similar configuration, then arrange (or allow the end user to arrange) the bases and transverse members into a variety of configurations to form different types of furniture." *See*, *e.g.*, '885 Patent (Ex. A) at 2:34-40.  This innovative design also permits a manufacturer or retailer to stock just two pieces of furniture: a base and a transverse member.  *See*, *e.g.*, '885 Patent (Ex. A) at 2:8-10.

19.   This flexibility also provides an advantage to the customer, who can combine bases and transverse members into many different configurations.  *See*, *e.g.*, '885 Patent (Ex. A) at 2:40-43.

20.   The '885 Patent further discloses that the modular nature of the claimed invention is useful in moving furniture pieces into place:

> the present invention enables the consumer to have a piece of furniture in a remote location where previously other pieces of furniture could not be moved due to their bulkiness and/or size. The present invention is easily disassembled, thus enabling a consumer to locate the base(s) and/or transverse member(s) in an otherwise inaccessible location and then assemble them to form a furniture assembly.

*See*, *e.g.*, '885 Patent (Ex. A) at 3:1-8.

21.   In addition, the claimed invention of the '885 Patent also includes "removable outer liners" for the transverse members and the base, which allows a customer to easily clean and launder the modular furniture assembly.  *See*, *e.g.*, '885 Patent (Ex. A) at 3:18-20.

22.   The '885 Patent further discloses exemplary coupler devices that allow the bases and transverse members to be configured in numerous different ways, as shown in the exemplary figure below:

COMPLAINT



*See*, *e.g.*, '885 Patent (Ex. A) at Figure 8.

23. The Lovesac Sactionals product has received numerous positive reviews from critics and influencers alike. For example, in one review titled Lovesac Sactional Review: My Recommendation After 4 Years, a reviewer summarized their opinion as follows:

> The Lovesac Sactional is the most versatile couch I have ever owned. It is also the most durable. I bought my first Sactional back in July of 2013. Just recently I bought another back and seat to expand it as my family is growing. Although this furniture isn't cheap, you definitely get what you pay for which is quality that will stand the test of time and kids.

Ben Trapskin, *Lovesac Sactional Review: My Recommendation After 4 Years*, THE SLEEP SHERPA, Oct. 13, 2021, available at https://sleepsherpa.com/lovesac-sactional-review-recommendation-4-years/ (Ex. G).

24. Another reviewer made similar comments regarding the Lovesac Sactionals product, giving high praise:

> [Lovesac Sactionals] claims to be the world's most adaptable couch and, honestly, it just may be. The Lovesac Sactionals are comprised of combinable pieces, with "seats" (where you sit) and "sides" (the back and arms). The couches are endlessly

customizable (they fit together like puzzle pieces), with the possibility to start small and add to it over time.

Bailey Berg, *Couch Review: Lovesac Sactional*, ARCHITECTURAL DIGEST, November 4, 2021 available at https://www.architecturaldigest.com/story/lovesac-sactional-review, (Ex. H).

25.    Joybird began manufacturing and selling furniture in 2014.

26.    More recently, Joybird recently expanded its product offerings with its new "Notch Modular" product which copies many of the patent innovations of the Lovesac Sactionals product. The Joybird Notch Modular product competes directly with the Lovesac Sactionals product.

## COUNT I: PATENT INFRINGEMENT
### U.S. PATENT NO. 7,213,885

27.    Lovesac incorporates by reference and re-alleges paragraphs 1-26 as if fully set forth herein.

28.    On May 8, 2007, the United States Patent Office duly and legally issued the '885 Patent.  A true and correct copy of the '885 Patent is attached as Exhibit A.

29.    Lovesac owns the '885 Patent by assignment.

30.    Lovesac provided actual notice to Joybird of its infringement of the '885 Patent prior to the filing of this lawsuit.

31.    As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '885 Patent in connection with the Joybird Notch Modular product.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Joybird Notch Modular products that Lovesac obtains in discovery.

COMPLAINT

| '885 pat., cl. 18 | Joybird Notch Modular Product |
|---|---|
| A **modular furniture assembly** comprising: | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I)<br><br><br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

| | |
|---|---|
| a **base** configured such that the **base** has a **length (x)** and a **width (y)**; | <br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **transverse member** having a **length (x′)** and a **width (z)**; | <br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| | <br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

COMPLAINT

wherein the **base** and the **transverse member** have a defined spatial relationship, the defined spatial relationship being: the **length (x)** of the **base** is substantially equal to the **length (x′)** of the **transverse member**, and



Joybird Notch Modular – Assembly Instructions (Ex. I)



Joybird Notch Modular – Assembly Instructions (Ex. I)

the **length (x)** of the base is substantially equal to the sum of the **width (y)** of the **base** and the **width (z)** of the **transverse member**, such that different furniture configurations can be formed.



Joybird Notch Modular – Assembly Instructions (Ex. I)

COMPLAINT



Joybird Notch Modular – Assembly Instructions (Ex. I)

32.     Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe the asserted claims of the '885 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Joybird Notch Modular products to directly infringe the asserted claims of the '885 Patent.  In particular, (a) Joybird has actual knowledge of the '885 Patent or was willfully blind to its existence no later than, the filing of this Complaint, (b) Joybird intentionally causes, urges, or encourages users of the Joybird Notch Modular products to directly infringe one or more claims of the '885 Patent by promoting, advertising, and instructing customers and potential customers about the Joybird Notch Modular products and uses thereof, including infringing uses (*see* Ex. I), (c) Joybird knows (or should know) that its actions will induce users of the Joybird Notch Modular products to directly infringe one or more claims the '885 Patent (*see* ¶ 30, above), and (d) users of the Joybird Notch Modular products directly infringe one or more claims of the '885 Patent.  For example, at a minimum, Joybird supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of the Joybird Notch Modular products infringes one or more claims of the '885 Patent and that Joybird's customers then directly infringe one or more claims of the '885 Patent by installing and/or using the Joybird Notch Modular products in

COMPLAINT

accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.  As another example, Joybird has supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of these products will infringe one or more claims of the '885 Patent and that Joybird's customers directly infringe one or more claims of the '885 Patent by using Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.

33.    Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe one or more of the claims of the '885 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Joybird Notch Modular products that contribute to the direct infringement of the '885 Patent by users of the Joybird Notch Modular products.  In particular, (a) Joybird has actual knowledge of the '885 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 30, above), (b) Joybird offers for sale, sells, and/or imports, in connection with the Joybird Notch Modular products, one or more material components of the invention of the '885 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Joybird knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '885 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '885 Patent. For example, at a minimum, Joybird offers for sale, sells, and/or imports Joybird Notch Modular products that meet one or more claims of the '885 Patent.  *See*, *e.g.*, Ex. I.  The components of Joybird Notch Modular products are material components of the devices that meet the one or more claims of the '885 Patent. Further, Joybird especially made and/or adapted the components of the Joybird Notch Modular products for use in devices that meet the one or more claims of the '885 Patent, and the components of Joybird Notch Modular products are not a staple article of commerce suitable for substantial non-infringing use.  Joybird's customers directly

infringe the one or more claims of the '885 Patent by installing and/or using the components of the Joybird Notch Modular products.

34.     Joybird's infringement of the '885 Patent is also willful because Joybird (a) had actual knowledge of the '885 Patent and/or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 30, above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Joybird's actions constituted infringement of the '885 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Joybird.

35.     Additional allegations regarding Joybird's pre-suit knowledge of the '885 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

36.     Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '885 Patent.

37.     Lovesac is entitled to recover from Joybird all damages that Lovesac has sustained as a result of Joybird's infringement of the '885 Patent, including, without limitation, a reasonable royalty and lost profits.

38.     Joybird's infringement of the '885 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

39.     Joybird's infringement of the '885 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

40.     Joybird's infringement of the '885 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

## COUNT II: PATENT INFRINGEMENT
## U.S. PATENT NO. 7,419,220

41.     Lovesac incorporates by reference and re-alleges paragraphs 1-26 as if fully set forth herein.

42.     On September 2, 2008, the United States Patent Office duly and legally issued the '220 Patent.  A true and correct copy of the '220 Patent is attached as Exhibit B.

43.     Lovesac owns the '220 Patent by assignment.

44.     Lovesac provided actual notice to Joybird of its infringement of the '220 Patent prior to the filing of this lawsuit.

45.     As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 3 of the '220 Patent in connection with the Joybird Notch Modular product.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Joybird Notch Modular products that Lovesac obtains in discovery.

| '220 pat., cl. 3 | Joybird Notch Modular Product |
|---|---|
| A liner assembly for modular furniture, the modular furniture having a **base** and a **transverse member**, the liner assembly comprising: | <br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

COMPLAINT

| | |
|---|---|
| a **base liner** adapted to cover the **base**, the **base liner** having a **length (x)** and a **width (y)**; | 
Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **transverse member liner** adapted to cover the transverse member, the transverse member liner having a **length (x′)** and a **width (z)**; | 
Joybird Notch Modular – Assembly Instructions (Ex. I)
 |

COMPLAINT

| | Joybird Notch Modular – Assembly Instructions (Ex. I) |
|---|---|
| wherein the **base liner** and the **transverse member liner** have a defined spatial relationship, the defined spatial relationship being:<br><br>the **length (x)** of the **base liner** is substantially equal to the **length (x′)** of the **transverse member liner**, and | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I)<br><br><br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| the **length (x)** of the **base liner** is substantially equal to the sum of the **width (y)** of the **base liner** and the **width (z)** of the **transverse member liner.** |  |

1
2
3
4
5
6
7
8
9
10



Joybird Notch Modular – Assembly Instructions (Ex. I)

11

12    46.    Additionally and/or alternatively, Joybird has indirectly infringed and
13 continues to indirectly infringe the asserted claims of the '220 Patent, in violation of
14 35 U.S.C. § 271(b), by actively inducing users of the Joybird Notch Modular
15 products to directly infringe the asserted claims of the '220 Patent.  In particular,
16 (a) Joybird has actual knowledge of the '220 Patent or was willfully blind to its
17 existence no later than, the filing of this Complaint, (b) Joybird intentionally causes,
18 urges, or encourages users of the Joybird Notch Modular products to directly
19 infringe one or more claims of the '220 Patent by promoting, advertising, and
20 instructing customers and potential customers about the Joybird Notch Modular
21 products and uses thereof, including infringing uses (*See* Ex. I), (c) Joybird knows
22 (or should know) that its actions will induce users of the Joybird Notch Modular
23 products to directly infringe one or more claims the '220 Patent (*see* ¶ 44, above),
24 and (d) users of the Joybird Notch Modular products directly infringe one or more
25 claims of the '220 Patent.  For example, at a minimum, Joybird supplied and
26 continues to supply Joybird Notch Modular products to customers while knowing
27 that use of the Joybird Notch Modular products infringes one or more claims of the
28 '220 Patent and that Joybird's customers then directly infringe one or more claims

COMPLAINT

of the '220 Patent by installing and/or using the Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.  As another example, Joybird has supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of these products will infringe one or more claims of the '220 Patent and that Joybird's customers directly infringe one or more claims of the '220 Patent by using Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.

47.    Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe one or more of the claims of the '220 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Joybird Notch Modular products that contribute to the direct infringement of the '220 Patent by users of the Joybird Notch Modular products.  In particular, (a) Joybird has actual knowledge of the '220 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 44, above), (b) Joybird offers for sale, sells, and/or imports, in connection with the Joybird Notch Modular products, one or more material components of the invention of the '220 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Joybird knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '220 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '220 Patent. For example, at a minimum, Joybird offers for sale, sells, and/or imports Joybird Notch Modular products that meet one or more claims of the '220 Patent.  *See*, *e.g.*, Ex. I.  The components of Joybird Notch Modular products are material components of the devices that meet the one or more claims of the '220 Patent. Further, Joybird especially made and/or adapted the components of the Joybird Notch Modular products for use in devices that meet the one or more claims of the '220 Patent, and the components of Joybird Notch Modular products are not a staple article of

COMPLAINT

commerce suitable for substantial non-infringing use.  Joybird's customers directly infringe the one or more claims of the '220 Patent by installing and/or using the components of the Joybird Notch Modular products.

48.    Joybird's infringement of the '220 Patent is also willful because Joybird (a) had actual knowledge of the '220 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 44, above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Joybird's actions constituted infringement of the '220 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Joybird.

49.    Additional allegations regarding Joybird's pre-suit knowledge of the '220 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

50.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '220 Patent.

51.    Lovesac is entitled to recover from Joybird all damages that Lovesac has sustained as a result of Joybird's infringement of the '220 Patent, including, without limitation, a reasonable royalty and lost profits.

52.    Joybird's infringement of the '220 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

53.    Joybird's infringement of the '220 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

54.    Joybird's infringement of the '220 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

COMPLAINT

# COUNT III: PATENT INFRINGEMENT
## U.S. PATENT NO. 8,783,778

55.    Lovesac incorporates by reference and re-alleges paragraphs 1-26 as if fully set forth herein.

56.    On July 22, 2014, the United States Patent Office duly and legally issued the '778 Patent.  A true and correct copy of the '778 Patent is attached as Exhibit C.

57.    Lovesac owns the '778 Patent by assignment.

58.    Lovesac provided actual notice to Joybird of its infringement of the '778 Patent prior to the filing of this lawsuit.

59.    As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '778 Patent in connection with the Joybird Notch Modular product.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Joybird Notch Modular products that Lovesac obtains in discovery.

| '778 patent, cl. 1 | Joybird Notch Modular Product |
| --- | --- |
| A **modular furniture assembly** comprising: |  |

| | Joybird Notch Modular – Assembly Instructions (Ex. I) |
|---|---|
| |  |
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **base member having a frame assembly**; and |  |
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |

| | |
|---|---|
| a **transverse member having a height that is substantially greater** than **the height of the base member**, the **transverse member having a frame assembly**; | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **foot configured to contact** a **support surface**; and | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

1
2
3
4
5
6
7
8
9
10
11
12
13

| | |
|---|---|
| **a mounting platform**, the **mounting platform** configured to be mounted on both the **base member frame assembly** and the **transverse member frame assembly** to thereby couple the **base member frame assembly** to the **transverse member frame assembly**, | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| wherein the **foot is selectively mounted on the mounting platform**, such that the **foot is configured to contact** the **support surface** when the modular furniture assembly is in an upright configuration. | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Joybird Notch Modular – Assembly Instructions (Ex. I)

60.    Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe the asserted claims of the '778 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Joybird Notch Modular products to directly infringe the asserted claims of the '778 Patent.  In particular, (a)  Joybird has actual knowledge of the '778 Patent or was willfully blind to its existence no later than, the filing of this Complaint, (b) Joybird intentionally causes, urges, or encourages users of the Joybird Notch Modular products to directly infringe one or more claims of the '778 Patent by promoting, advertising, and instructing customers and potential customers about the Joybird Notch Modular products and uses thereof, including infringing uses (*See* Ex. I), (c) Joybird knows (or should know) that its actions will induce users of the Joybird Notch Modular products to directly infringe one or more claims the '778 Patent (*see* ¶ 58, above), and (d) users of the Joybird Notch Modular products directly infringe one or more claims of the '778 Patent.  For example, at a minimum, Joybird supplied and continues to supply Joybird Notch Modular products to customers while knowing

that use of the Joybird Notch Modular products infringes one or more claims of the '778 Patent and that Joybird's customers then directly infringe one or more claims of the '778 Patent by installing and/or using the Joybird Notch Modular products in accordance with Joybird's product literature. *See*, *e.g.*, Ex. I.  As another example, Joybird has supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of these products will infringe one or more claims of the '778 Patent and that Joybird's customers directly infringe one or more claims of the '778 Patent by using Joybird Notch Modular products in accordance with Joybird's product literature. *See*, *e.g.*, Ex. I.

61.   Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe one or more of the claims of the '778 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Joybird Notch Modular products that contribute to the direct infringement of the '778 Patent by users of the Joybird Notch Modular products.  In particular, (a) Joybird has actual knowledge of the '778 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 58, above), (b) Joybird offers for sale, sells, and/or imports, in connection with the Joybird Notch Modular products, one or more material components of the invention of the '778 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Joybird knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '778 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '778 Patent. For example, at a minimum, Joybird offers for sale, sells, and/or imports Joybird Notch Modular products that meet one or more claims of the '778 Patent. *See*, *e.g.*, Ex. I.  The components of Joybird Notch Modular products are material components of the devices that meet the one or more claims of the '778 Patent. Further, Joybird especially made and/or adapted the components of the Joybird Notch Modular

products for use in devices that meet the one or more claims of the '778 Patent, and the components of Joybird Notch Modular products are not a staple article of commerce suitable for substantial non-infringing use.  Joybird's customers directly infringe the one or more claims of the '778 Patent by installing and/or using the components of the Joybird Notch Modular products.

62.     Joybird's infringement of the '778 Patent is also willful because Joybird (a) had actual knowledge of the '778 Patent and/or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 58, above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Joybird's actions constituted infringement of the '778 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Joybird.

63.     Additional allegations regarding Joybird's pre-suit knowledge of the '778 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

64.     Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '778 Patent.

65.     Lovesac is entitled to recover from Joybird all damages that Lovesac has sustained as a result of Joybird's infringement of the '778 Patent, including, without limitation, a reasonable royalty and lost profits.

66.     Joybird's infringement of the '778 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

67.     Joybird's infringement of the '778 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

68.     Joybird's infringement of the '778 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

COMPLAINT

**COUNT IV: PATENT INFRINGEMENT**
**U.S. PATENT NO. 10,123,623**

69.     Lovesac incorporates by reference and re-alleges paragraphs 1-26 as if fully set forth herein.

70.     On November 13, 2018, the United States Patent Office duly and legally issued the '623 Patent.  A true and correct copy of the '623 Patent is attached as Exhibit D.

71.     Lovesac owns the '623 Patent by assignment.

72.     Lovesac provided actual notice to Joybird of its infringement of the '623 Patent prior to the filing of this lawsuit.

73.     As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '623 Patent in connection with the Joybird Notch Modular product.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Joybird Notch Modular products that Lovesac obtains in discovery.

| '623 patent, cl. 1 | Joybird Notch Modular Product |
|---|---|
| A **modular furniture assembly** comprising: |  |

COMPLAINT

| | Joybird Notch Modular – Assembly Instructions (Ex. I) |
|---|---|
| |  |
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **base member providing a seating surface**; |  |
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |

COMPLAINT

| | |
|---|---|
| a **transverse member having a height** that is substantially greater than **the height of the seating surface of the base member**, | <br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **first coupler configured to selectively couple the base member to the transverse member**; | <br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

COMPLAINT

a **second coupler, spaced apart from the first coupler, the second coupler being configured to selectively couple the base member to the transverse member**,



Joybird Notch Modular – Assembly Instructions (Ex. I)



Joybird Notch Modular – Assembly Instructions (Ex. I)

COMPLAINT

wherein the **second coupler is positioned lower than the <span style="color:red">first coupler</span>**, so as to selectively couple together a **lower portion of the base member** to a **lower portion of the transverse member**;



Joybird Notch Modular – Assembly Instructions (Ex. I)



Joybird Notch Modular – Assembly Instructions (Ex. I)

wherein the **first coupler** selectively couples together a higher portion of the **base member** to a higher portion of the **transverse member**.



Joybird Notch Modular – Assembly Instructions (Ex. I)



Joybird Notch Modular – Assembly Instructions (Ex. I)

74.     Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe the asserted claims of the '623 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Joybird Notch Modular products to directly infringe the asserted claims of the '623 Patent.  In particular,

(a) Joybird has actual knowledge of the '623 Patent or was willfully blind to its existence no later than, the filing of this Complaint, (b) Joybird intentionally causes, urges, or encourages users of the Joybird Notch Modular products to directly infringe one or more claims of the '623 Patent by promoting, advertising, and instructing customers and potential customers about the Joybird Notch Modular products and uses thereof, including infringing uses (*See* Ex. I), (c) Joybird knows (or should know) that its actions will induce users of the Joybird Notch Modular products to directly infringe one or more claims the '623 Patent, and (d) users of the Joybird Notch Modular products directly infringe one or more claims of the '623 Patent.  For example, at a minimum, Joybird supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of the Joybird Notch Modular products infringes one or more claims of the '623 Patent and that Joybird's customers then directly infringe one or more claims of the '623 Patent by installing and/or using the Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.  As another example, Joybird has supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of these products will infringe one or more claims of the '623 Patent and that Joybird's customers directly infringe one or more claims of the '623 Patent by using Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.

75.    Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe one or more of the claims of the '623 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Joybird Notch Modular products that contribute to the direct infringement of the '623 Patent by users of the Joybird Notch Modular products.  In particular, (a) Joybird has actual knowledge of the '623 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 72, above), (b) Joybird offers for sale, sells,

COMPLAINT

and/or imports, in connection with the Joybird Notch Modular products, one or more material components of the invention of the '623 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Joybird knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '623 Patent (*see* ¶ 72, above), and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '623 Patent. For example, at a minimum, Joybird offers for sale, sells, and/or imports Joybird Notch Modular products that meet one or more claims of the '623 Patent.  *See*, *e.g.*, Ex. I.  The components of Joybird Notch Modular products are material components of the devices that meet the one or more claims of the '623 Patent. Further, Joybird especially made and/or adapted the components of the Joybird Notch Modular products for use in devices that meet the one or more claims of the '623 Patent, and the components of Joybird Notch Modular products are not a staple article of commerce suitable for substantial non-infringing use.  Joybird's customers directly infringe the one or more claims of the '623 Patent by installing and/or using the components of the Joybird Notch Modular products.

76.    Joybird's infringement of the '623 Patent is also willful because Joybird (a) had actual knowledge of the '623 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 72, above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Joybird's actions constituted infringement of the '623 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Joybird.

77.    Additional allegations regarding Joybird's pre-suit knowledge of the '623 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

78.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '623 Patent.

COMPLAINT

79.     Lovesac is entitled to recover from Joybird all damages that Lovesac has sustained as a result of Joybird's infringement of the '623 Patent, including, without limitation, a reasonable royalty and lost profits.

80.     Joybird's infringement of the '623 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

81.     Joybird's infringement of the '623 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

82.     Joybird's infringement of the '623 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

## COUNT V: PATENT INFRINGEMENT
### U.S. PATENT NO. 10,154,733

83.     Lovesac incorporates by reference and re-alleges paragraphs 1-26 as if fully set forth herein.

84.     On December 18, 2018, the United States Patent Office duly and legally issued the '733 Patent.  A true and correct copy of the '733 Patent is attached as Exhibit E.

85.     Lovesac owns the '733 Patent by assignment.

86.     Lovesac provided actual notice to Joybird of its infringement of the '733 Patent prior to the filing of this lawsuit.

87.     As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '733 Patent in connection with the Joybird Notch Modular product.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Joybird Notch Modular products that Lovesac obtains in discovery.

COMPLAINT

| '733 patent, cl. 1 | Joybird Notch Modular Product |
|---|---|
| A **modular furniture assembly** comprising: | <br>Joybird Notch Modular – Assembly Instructions (Ex. I)<br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

| a **base member having a frame assembly**; and | 
Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **transverse member having a frame assembly**; | 
Joybird Notch Modular – Assembly Instructions (Ex. I) |

| a **mounting platform**, the **mounting platform configured to be mounted** on both **the base member** and **the transverse member** to thereby couple **the base member** to **the transverse member**; | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
|---|---|
| and **a foot configured to contact** **a support surface**; | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

| wherein **the foot** is mounted on the **mounting platform**, |  |
|---|---|
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |
| such that **the foot** is configured to contact **the support surface** when the modular furniture assembly is in an upright configuration. |  |
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |

88.     Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe the asserted claims of the '733 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Joybird Notch Modular products to directly infringe the asserted claims of the '733 Patent.  In particular, (a) Joybird has actual knowledge of the '733 Patent or was willfully blind to its

existence no later than, the filing of this Complaint, (b) Joybird intentionally causes, urges, or encourages users of the Joybird Notch Modular products to directly infringe one or more claims of the '733 Patent by promoting, advertising, and instructing customers and potential customers about the Joybird Notch Modular products and uses thereof, including infringing uses (*See* Ex. I), (c) Joybird knows (or should know) that its actions will induce users of the Joybird Notch Modular products to directly infringe one or more claims the '733 Patent (*see* ¶ 86, above), and (d) users of the Joybird Notch Modular products directly infringe one or more claims of the '733 Patent.  For example, at a minimum, Joybird supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of the Joybird Notch Modular products infringes one or more claims of the '733 Patent and that Joybird's customers then directly infringe one or more claims of the '733 Patent by installing and/or using the Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.  As another example, Joybird has supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of these products will infringe one or more claims of the '733 Patent and that Joybird's customers directly infringe one or more claims of the '733 Patent by using Joybird Notch Modular products in accordance with Joybird's product literature.  *See*, *e.g.*, Ex. I.

89.    Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe one or more of the claims of the '733 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Joybird Notch Modular products that contribute to the direct infringement of the '733 Patent by users of the Joybird Notch Modular products.  In particular, (a) Joybird has actual knowledge of the '733 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 86, above), (b) Joybird offers for sale, sells, and/or imports, in connection with the Joybird Notch Modular products, one or more

COMPLAINT

material components of the invention of the '733 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Joybird knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '733 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '733 Patent. For example, at a minimum, Joybird offers for sale, sells, and/or imports Joybird Notch Modular products that meet one or more claims of the '733 Patent. *See*, *e.g.*, Ex. I. The components of Joybird Notch Modular products are material components of the devices that meet the one or more claims of the '733 Patent. Further, Joybird especially made and/or adapted the components of the Joybird Notch Modular products for use in devices that meet the one or more claims of the '733 Patent, and the components of Joybird Notch Modular products are not a staple article of commerce suitable for substantial non-infringing use. Joybird's customers directly infringe the one or more claims of the '733 Patent by installing and/or using the components of the Joybird Notch Modular products.

90.    Joybird's infringement of the '733 Patent is also willful because Joybird (a) had actual knowledge of the '733 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 86, above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Joybird's actions constituted infringement of the '733 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Joybird.

91.    Additional allegations regarding Joybird's pre-suit knowledge of the '733 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

92.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '733 Patent.

COMPLAINT

93.     Lovesac is entitled to recover from Joybird all damages that Lovesac has sustained as a result of Joybird's infringement of the '733 Patent, including, without limitation, a reasonable royalty and lost profits.

94.     Joybird's infringement of the '733 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

95.     Joybird's infringement of the '733 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

96.     Joybird's infringement of the '733 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

## COUNT VI: PATENT INFRINGEMENT
## U.S. PATENT NO. 10,806,261

97.     Lovesac incorporates by reference and re-alleges paragraphs 1-26 as if fully set forth herein.

98.     On October 20, 2020, the United States Patent Office duly and legally issued the '261 Patent.  A true and correct copy of the '261 Patent is attached as Exhibit F.

99.     Lovesac owns the '261 Patent by assignment.

100.   Lovesac provided actual notice to Joybird of its infringement of the '261 Patent prior to the filing of this lawsuit.

101.   As just one non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '261 Patent in connection with the Joybird Notch Modular product.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Joybird Notch Modular products that Lovesac obtains in discovery.

| '261 patent, cl. 6 | Joybird Notch Modular Product |
|---|---|
| A **modular furniture assembly** comprising: |  Joybird Notch Modular – Assembly Instructions (Ex. I)  Joybird Notch Modular – Assembly Instructions (Ex. I) |

| | |
|---|---|
| a **planar base member** having a generally rectangular shape; | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |
| a **planar transverse member** having a generally rectangular shape, wherein the **height of the transverse member** is substantial greater than the **height of the planar base member**; and | <br><br>Joybird Notch Modular – Assembly Instructions (Ex. I) |

COMPLAINT

| a **coupler configured to selectively couple** the **planar base member** to the **planar transverse member**. |  |
| --- | --- |
| | Joybird Notch Modular – Assembly Instructions (Ex. I) |

102.   Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe the asserted claims of the '261 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Joybird Notch Modular products to directly infringe the asserted claims of the '261 Patent.  In particular, (a) Joybird has actual knowledge of the '261 Patent or was willfully blind to its existence no later than, the filing of this Complaint, (b) Joybird intentionally causes, urges, or encourages users of the Joybird Notch Modular products to directly infringe one or more claims of the '261 Patent by promoting, advertising, and instructing customers and potential customers about the Joybird Notch Modular products and uses thereof, including infringing uses (*See* Ex. I), (c) Joybird knows (or should know) that its actions will induce users of the Joybird Notch Modular products to directly infringe one or more claims the '261 Patent (*see* ¶ 100, above), and (d) users of the Joybird Notch Modular products directly infringe one or more claims of the '261 Patent.  For example, at a minimum, Joybird supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of the Joybird Notch Modular products infringes one or more claims of the '261 Patent and that Joybird's customers then directly infringe one or more claims

COMPLAINT

of the '261 Patent by installing and/or using the Joybird Notch Modular products in accordance with Joybird's product literature. *See*, *e.g.*, Ex. I. As another example, Joybird has supplied and continues to supply Joybird Notch Modular products to customers while knowing that use of these products will infringe one or more claims of the '261 Patent and that Joybird's customers directly infringe one or more claims of the '261 Patent by using Joybird Notch Modular products in accordance with Joybird's product literature. *See*, *e.g.*, Ex. I.

103. Additionally and/or alternatively, Joybird has indirectly infringed and continues to indirectly infringe one or more of the claims of the '261 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Joybird Notch Modular products that contribute to the direct infringement of the '261 Patent by users of the Joybird Notch Modular products. In particular, (a) Joybird has actual knowledge of the '261 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 100, above), (b) Joybird offers for sale, sells, and/or imports, in connection with the Joybird Notch Modular products, one or more material components of the invention of the '261 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Joybird knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '261 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '261 Patent. For example, at a minimum, Joybird offers for sale, sells, and/or imports Joybird Notch Modular products that meet one or more claims of the '261 Patent. *See*, *e.g.*, Ex. I. The components of Joybird Notch Modular products are material components of the devices that meet the one or more claims of the '261 Patent. Further, Joybird especially made and/or adapted the components of the Joybird Notch Modular products for use in devices that meet the one or more claims of the '261 Patent, and the components of Joybird Notch Modular products are not a staple article of

COMPLAINT

commerce suitable for substantial non-infringing use.  Joybird's customers directly infringe the one or more claims of the '261 Patent by installing and/or using the components of the Joybird Notch Modular products.

104.   Joybird's infringement of the '261 Patent is also willful because Joybird (a) had actual knowledge of the '261 Patent or was willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶ 100, above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Joybird's actions constituted infringement of the '261 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Joybird.

105.   Additional allegations regarding Joybird's pre-suit knowledge of the '261 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

106.   Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '261 Patent.

107.   Lovesac is entitled to recover from Joybird all damages that Lovesac has sustained as a result of Joybird's infringement of the '261 Patent, including, without limitation, a reasonable royalty and lost profits.

108.   Joybird's infringement of the '261 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

109.   Joybird's infringement of the '261 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

110.   Joybird's infringement of the '261 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

COMPLAINT

- 49 -

1

## **PRAYER FOR RELIEF**

WHEREFORE, Lovesac respectfully requests:

A.      That Judgment be entered that Joybird has infringed at least one or more claims of the patents-in-suit, directly and/or indirectly, literally and/or under the doctrine of equivalents, and that such infringement is willful;

B.      An injunction enjoining Joybird, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with Joybird, and its parents, subsidiaries, divisions, successors and assigns, from further infringement of the patents-in-suit.

C.      An award of damages sufficient to compensate Lovesac for Joybird's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Joybird's willful infringement;

D.      That the case be found exceptional under 35 U.S.C. § 285 and that Lovesac be awarded its reasonable attorneys' fees;

E.      Costs and expenses in this action;

F.      An award of prejudgment and post-judgment interest; and

G.      Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Lovesac demands a trial by jury on all claims and defenses so triable.


Dated:  December 23, 2021.            Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
WORKMAN NYDEGGER PC

By:   _/s/ Alyssa Caridis_____
Alyssa Caridis
*Attorneys for The Lovesac Company*

COMPLAINT

- 50 -